IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

ARIZONA DEPARTMENT OF WATER RESOURCES, AN AGENCY OF THE STATE OF ARIZONA; FREEPORT MINERALS CORPORATION, A DELAWARE CORPORATION, *Petitioners,*

*v.*

HON. CRANE MCCLENNEN, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA, *Respondent,*

MOHAVE COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA, *Real Party in Interest.*

No. CV-15-0223-SA
Filed November 12, 2015

Special Action from the Superior Court in Maricopa County
The Honorable Crane McClennen, Judge
No. LC2014-000624
**VACATED AND REMANDED**

COUNSEL:

Kenneth C. Slowinski, Janet L. Miller (argued), Jennifer Heim, Arizona Department of Water Resources, Phoenix, Attorneys for Arizona Department of Water Resources

L. William Staudenmaier (argued), Snell & Wilmer, Phoenix; and Timothy Berg, Sean T. Hood, Rhett A. Billingsley, Fennemore Craig, P.C., Phoenix, Attorneys for Freeport Minerals Corporation

John F. Munger, Adriane J. Hofmeyr (argued), Robert J. Metli, Lawrence V. Robertson, Jr., Munger Chadwick, P.L.C., Tucson, Attorneys for Mohave County

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Theresa M. Craig, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona State Land Department

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, James F. Odenkirk, Assistant Attorney General, Phoenix, Attorneys for Amicus Curiae Arizona State Game and Fish Department

David K. Wilhelmsen, Lance B. Payette, Favour & Wilhelmsen, PLLC, Prescott, Attorneys for Amicus Curiae Hualapai Tribe

Jay Johnson, David Johnson, Central Arizona Project, Phoenix, Attorneys for Amicus Curiae Central Arizona Water Conservation District

John B. Weldon, Jr., Lisa M. McKnight, Salmon Lewis & Weldon PLC, Phoenix, Attorneys for Amicus Curiae Salt River Project Agricultural Improvement and Power District

Jeffrey W. Crockett, Crockett Law Group PLLC, Phoenix, Attorneys for Amici Curiae La Paz County and the Arizona Association of Counties

_____

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL, TIMMER, and BERCH (Retired) joined.

_____

CHIEF JUSTICE BALES, opinion of the Court:

¶1         Under Arizona law, a right to use surface water may be acquired by appropriation.  This right may be severed from the land to which it is appurtenant and, subject to the approval of the Director of the Arizona Department of Water Resources ("ADWR") and other conditions listed in A.R.S. § 45-172, may be transferred without losing its priority. "Interested persons" may file objections with ADWR to a proposed severance and transfer, and they may seek judicial review if ADWR grants approval over their objections.

¶2         We hold that § 45-172 identifies the only grounds on which ADWR can deny a properly filed application to sever and transfer a water right.  We further hold that the "interested persons" entitled to object to a proposed severance and transfer are limited to those with interests protected by § 45-172.  In this case, ADWR properly denied objections filed by Mohave County because the County did not allege any violation of conditions specified in the statute and did not qualify as an "interested person."

2

**I.**

¶3        In 2010, Freeport Minerals Corporation ("Freeport") filed applications with ADWR to transfer water rights appurtenant to land within Planet Ranch in Mohave County along the Bill Williams River corridor.  The applications sought to sever water rights from Planet Ranch and transfer them to a wellfield near Wikieup, which in turn would be used at the Bagdad Mining Complex in Yavapai County for mining and municipal uses, and to other areas within Planet Ranch for use in the Lower Colorado River Multi-Species Conservation Program.  No water would be physically moved from Planet Ranch to the Bagdad Mining Complex.  The transfers instead concern the "right" to use water for certain purposes "without losing priority theretofore established."  A.R.S. § 45-172(A).

¶4        Approval of these applications is a requirement of settlement agreements between Freeport, the Department of the Interior ("DOI"), the Arizona Game and Fish Department, and the Hualapai Tribe.  Congress approved the settlement agreements in the Bill Williams River Water Rights Settlement Act of 2014, Pub. L. No. 113-223, 128 Stat. 2096-2110 (2014) ("Act").  The Act will expire on December 31, 2015, if certain conditions are not met, including issuance by December 15, 2015, of a final non-appealable decision to grant Freeport's severance and transfer applications.  Freeport, DOI, and the Tribe may jointly agree to extend the deadlines.

¶5        As required by A.R.S. § 45-172(A)(7), ADWR published notice of Freeport's severance and transfer applications in newspapers circulated in Mohave County.  The notice stated that "any interested person" could file written objections.  Mohave County filed objections with ADWR, alleging that approving the applications might negatively affect "an already strained water supply" and increase tax burdens on County residents.  The County also argued that the proposed severance and transfer would be against the public interest.

¶6        ADWR eventually rejected the County's objections.  In an appealable agency action, ADWR found that the County had not identified any water rights held by the County that would be affected by granting the applications and that ADWR was not authorized to deny the applications on the grounds that they are against the public interest or might result in an increased tax burden on Mohave County residents.  After an administrative appeal, an Administrative Law Judge ("ALJ") rejected the

3

County's arguments and concluded that the County failed to assert any legally valid objection under § 45-172. Because none of the County's objections were based on the "limitations and conditions" enumerated in § 45-172(A), the ALJ determined that ADWR lacked authority to deny Freeport's applications. ADWR accepted the ALJ's decision as its final decision in November 2014.

¶7        In December 2014, the County filed an appeal in superior court. In June 2015, the superior court vacated ADWR's final decision. The court, without explaining its decision, ruled that ADWR's decision was contrary to law, arbitrary and capricious, and an abuse of discretion.

¶8        ADWR and Freeport filed an appeal with the Arizona Court of Appeals and then moved to transfer the appeal to this Court. Given the approaching December 15 deadline for a final non-appealable decision on the applications, Freeport and ADWR also filed a petition for special action in this Court.

¶9        Because the case presents a legal issue of first impression and statewide importance, and a final decision may be necessary before December 15, we accepted special action jurisdiction. By separate order, we grant the motion by ADWR and Freeport to transfer the pending appeal to this Court, and we dismiss that appeal as moot in light of today's opinion.

## II.

### A.

¶10        Arizona law provides that the surface waters of the state "belong to the people and are subject to appropriation and beneficial use as provided [in chapter 1 of A.R.S. title 45]." A.R.S. § 45-141. *Cf. Davis v. Agua Sierra Resources, L.L.C.*, 220 Ariz. 108, 110 ¶ 10, 203 P.3d 506, 508 (2009) (discussing how Arizona law distinguishes surface water from groundwater). Generally, the "person . . . first appropriating the water shall have the better right." A.R.S. § 45-151(A). Applications for the appropriation of water are submitted to ADWR, which is directed to reject an application if it "or the proposed use conflicts with vested rights, is a menace to public safety, or is against the interests and welfare of the public." A.R.S. § 45-153(A).

¶11 A water right is protected in various ways, *see, e.g.,* § 45-151(D) (providing that a right "shall not be diminished, impaired or otherwise affected because other water is or may be available to the appropriator"); § 45-172(A)(2) (providing that transfers of water rights shall not affect, infringe upon, or interfere with "vested or existing rights"); *see also Adams v. Salt River Valley Water Users' Ass'n*, 53 Ariz. 374, 387–89 P.2d 1060, 1066 (1939) (describing water rights). Such rights, however, cease to exist, "and the water shall revert to the public and shall again be subject to appropriation," if the owner of the right fails to use the appropriated water for five successive years. § 45-141(C).

¶12 The transfer of water rights is addressed in A.R.S. § 45-172(A), which provides:

> A. A water right may be severed from the land to which it is appurtenant . . . and may be transferred for use . . . without losing priority theretofore established, *subject to the following limitations and conditions*:
>
> 1. [N]o such severance and transfer shall be made unless approved by the director [of ADWR].
> 2. Vested or existing rights to the use of water shall not be affected, infringed upon, nor interfered with [by the proposed severance and transfer] . . . .
> 3. The water rights sought to be transferred shall have been lawfully perfected . . . and shall not have thereafter been forfeited or abandoned. . . .
> 7. An application for severance and transfer of a water right shall be filed with the director. The director shall give notice of the application by publication . . . in a newspaper of general circulation in the county or counties in which the watershed or drainage area is located. The notice shall state that *any interested person* may file written objections to the proposed severance and transfer with the director within thirty days after the last publication of the notice.

(emphasis added).

¶13        Resolving this case requires us to decide if ADWR can deny a properly filed application for reasons other than those identified in § 45-172 and if Mohave County is an "interested person" entitled to file objections to the proposed transfers.

**B**.

¶14        In construing statutes, we seek to give effect to the Legislature's intent. *J.D. v. Hegyi*, 236 Ariz. 39, 40 ¶ 6, 335 P.3d 1118, 1119 (2014). By its terms, § 45-172(A) provides that water rights may be severed and transferred "with the consent of the owner," and "without losing priority theretofore established, subject to the following limitations and conditions." Subsections (1) through (7) specify various limits or conditions on transfers, such as a directive that ADWR "shall by order . . . define and limit the amount of water to be diverted or used annually" to ensure that the transfer does not affect vested or existing rights. A.R.S. § 45-172(A)(2).

¶15        Moreover, ADWR's review of an application for the severance and transfer of water rights is a "licensing decision" as that phrase is defined in A.R.S. §§ 41-1001(12) and (13). Section 41-1030(B) prohibits ADWR from basing a licensing decision "in whole or in part on a licensing requirement or condition that is not specifically authorized by statute." The parties do not dispute this point.

¶16        Mohave County does not contend that the proposed transfers violate any of the limitations and conditions specified in § 45-172. Instead, the County argues that this statute and others allow ADWR to consider other factors, such as whether a transfer is contrary to the public interest. This argument, however, is not supported by the language of § 45-172 or the other statutes identified by the County.

¶17        The County notes that § 45-172(A) states that a water right "may be severed . . . and . . . transferred," and argues that use of the conditional "may" suggests that ADWR has discretion to deny a transfer application for reasons other than those identified in § 45-172(A). When read in context, however, "may" is more plausibly understood as referring to the ability to sever and transfer the right, *cf. Davis,* 220 Ariz. at 110 ¶ 10, 203 P.3d at 508 (holding that groundwater rights are not severable), rather than defining ADWR's authority in reviewing applications. The word

"may" at the beginning of § 45-172(A) is followed by the explicit statement that transfers are "subject to the following limitations and conditions."

¶18 Under § 45-172(A)(1), water rights generally cannot be severed and transferred "unless approved by [ADWR]" and such approval "shall prescribe the conditions of the approval." To interpret "may" as affording ADWR broad discretion to deny or condition applications for reasons other than those set forth in § 45-172(A) would effectively ignore the limiting language that appears in the same sentence.

¶19 The County identifies two other statutes in arguing that ADWR can deny applications for reasons not specified in § 45-172(A). Section 45-141(A), the County notes, states that surface waters "belong to the public." That statement, however, is qualified by the recognition that such waters "are subject to appropriation and use as provided in this chapter," § 45-141(A). Once appropriated pursuant to the relevant statutes, a water right belongs to its owner, with the prospect that the water may "revert" to the public if the right is forfeited or abandoned, § 45-141(C). In its objections, the County did not allege any abandonment or forfeiture of water rights. That surface waters generally belong to the public does not expand ADWR's authority to deny – or restrict the owner's right to effect – the severance and transfer of an existing water right under § 45-172.

¶20 The County also points to ADWR's authority under § 45-153(A) to deny applications for the appropriation of water if, among other things, the proposed use would be "against the interests and welfare of the public." Section 45-153(A) is inapposite, however, because it applies to initial appropriations of water, which are not at issue here. It does not address ADWR's authority in reviewing applications for the severance and transfer of existing water rights. That the legislature directed ADWR to consider the public interest in § 45-153(A) but omitted any such directive in § 45-172 itself suggests that the latter statute more narrowly defines ADWR's authority in reviewing applications for severance and transfer. *See Lewis v. Debord*, 238 Ariz. 28, 31-32 ¶ 11, 356 P.3d 314, 317-18 (2015) (declining to construe statute as impliedly including a requirement expressly stated in related statutes).

¶21 The County is likewise unconvincing in arguing that the proposed transfers should be treated as de facto new appropriations because they involve "a new location with different geography, geology,

rainfall, and neighbors." Accepting this argument would displace § 45-172(A), which recognizes that the transfer of a water right involves its use in a new location, and also takes into account certain aspects of the existing and proposed location, §§ 45-172(A)(4)-(6) (discussing transfers of rights either from within or into boundaries of irrigation districts, agricultural improvement districts, or water users' associations), and impacts on certain "neighbors," § 45-172(A)(2) (providing that severance and transfer shall not affect other vested or existing water rights).

¶22 In short, ADWR's authority to deny a properly filed application for the severance and transfer of water rights is defined by the "limitations and conditions" set forth in § 45-172(A). Accordingly, ADWR did not abuse its discretion, act arbitrarily or capriciously, or act contrary to law in denying the County's objections to the proposed transfers, when those objections did not identify any violation of § 45-172(A).

## C.

¶23 The scope of ADWR's authority to deny an application for severance and transfer is related to the second question we address: who qualifies as "any interested person" entitled to file objections to an application under § 45-172(A)(7)?

¶24 The phrase "any interested person" is ambiguous because it is not statutorily defined and is subject to more than one reasonable meaning. *See State ex rel. Montgomery v. Harris (Shilgevorkyan)*, 234 Ariz. 343, 345 ¶ 12, 322 P.3d 160, 162 (2014). We therefore must rely on other tools of statutory construction in resolving the ambiguity to give effect to the legislature's intent. *See id*. at 345 ¶ 13, 322 P.3d at 162.

¶25 The County argues that "interested" generally means having an interest in or concern about something, as its objections to the applications reflect, and thus it is an "interested person" authorized to file objections. But this argument effectively renders the word "interested" meaningless, as it would result in reading the statute as saying that *any* person may file objections if so inclined. It also ignores the fact that statutory words cannot be construed in isolation from their context. *See Lewis*, 238 Ariz. at 28 ¶ 16, 356 P.3d at 318.

¶26        It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993). The relevant phrase here is "any interested person" and it is used in a statute identifying those who may file objections to applications to sever and transfer water rights. The combination of "interested" with "person" means that the words must be interpreted together. As the Supreme Court has noted in a similar context, "two words together may assume a more particular meaning than those words in isolation." *FCC v. AT&T Inc.*, 562 U.S. 397, 404–06 (2011) (refusing to interpret "personal privacy" based on meaning of "personal" in isolation). For example, we "understand a golden cup to be a cup made of or resembling gold. . . . A golden opportunity is one not to be missed." *Id.* at 406.

¶27        Read in context, the phrase "any interested person" is most reasonably understood as referring to any person who has an "interest" that is protected by § 45-172 and that may be affected by the proposed transfer. Under this reading, for example, persons with "vested or existing rights to the use of water" could object to an application on the grounds that it would interfere with their rights. The County acknowledges that it has no such rights. Similarly, persons could object to an application if their consent was required but not obtained for a proposed severance and transfer. *See* § 45-172(A)(6). Without intending to exhaustively list those who may qualify as "interested persons," we also think such persons would include those who contend that an application concerns a right that has been abandoned or forfeited and the objecting party has an interest in appropriating the water from the public domain. *See* A.R.S. §§ 45-172(A)(3); 45-141(C). But the County made no such allegation in its objections before ADWR.

¶28        The County makes several other arguments for a broader interpretation of the phrase "any interested person," but we find them unconvincing. First, the County argues that because § 45-172(A)(7) requires that notice of an application be published in the county or counties where the watershed or drainage is located, the phrase "interested person" must encompass more than just those who have existing water rights, as a notice could be more narrowly targeted to such persons. This argument fails because requiring public notice about pending applications is not inconsistent with limiting objections to those who have interests protected by § 45-172(A), and the latter group is not necessarily limited only to those

who currently hold permits or certificates issued by ADWR under § 45-151(E).

¶29     Relying on general standing principles, the County also asserts that it has alleged the applications will cause it an "injury" and therefore it is an "interested person" under § 45-172(A)(7).  The County argues that granting the applications could "have a negative effect on water supplies in the area" or increase the tax burden on County residents by increasing the amount of government-owned, untaxed land in the County.  These alleged injuries are disputed.  But more importantly, the County's argument incorrectly conflates standing, which is a prudential doctrine by which courts eschew deciding issues when the plaintiff fails to allege a sufficient injury, *see e.g., Bennett v. Napolitano*, 206 Ariz. 520, 524 ¶ 16, 81 P.3d 311, 315 (2003), with the question of who is statutorily authorized, as an "interested person," to file objections in an ADWR administrative proceeding under § 45-172(A).

¶30     The County cites A.R.S. § 11-269.09(A) for the proposition that ADWR must consult and coordinate with the County before deciding on the applications.  This statute, however, generally provides that a county shall "demand by any lawful means" that the federal or state government "coordinate" with the County before enforcing a "law, regulation, plan or policy" that is stricter than those of the County itself.  A.R.S. § 11-69.09(A).  This statute does not apply here.

¶31     The County also cites A.R.S. § 11-804 as support for its claim that it is "statutorily obligated to plan for and protect water resources in Mohave County."   Section 11-804 requires counties to develop comprehensive plans generally intended to guide development.  A.R.S. § 11-804(A).  Plans for counties with a population exceeding 125,000, like Mohave County, must include "[p]lanning for water resources that addresses the known legally and physically available surface water, groundwater, and effluent supplies."  *Id.* at § 11-804(B)(3)(a).  This statute, however, does not purport to give the County any authority over the severance and transfer of water rights.  Nor do the planning obligations otherwise create any right on the part of the County that is recognized or protected by § 45-172.

¶32     Finally, the County argues that § 45-172(A) should be applied liberally to "promote the ends of justice," noting the Court adopted this

approach in construing the phrase "party beneficially interested" in Arizona's mandamus statute. *See* A.R.S. § 12-2021; *Armer v. Superior Court*, 112 Ariz. 478, 480, 543 P.2d 1107, 1109 (1975). But the County does not convincingly explain why the phrase "party beneficially interested" should be considered synonymous with the phrase "any interested person." The mandamus statute reflects the Legislature's desire to broadly afford standing on members of the public to bring lawsuits to compel officials to perform their "public duties." *See Armer*, 112 Ariz. at 480, 543 P.2d at 1109. In contrast, the phrase "any interested person" in § 45-172(A)(7) has nothing to do with satisfying standing to file a lawsuit. Rather, it allows certain persons to file objections to an application for severance and transfer of water rights being considered by ADWR.

¶33        For the reasons noted, we construe the phrase "any interested person" in § 45-172(A)(7) as referring to persons who allege that they have an interest that is protected by that statute and that would be affected by the application for severance and transfer. Because Mohave County has identified no such interest, ADWR correctly concluded that the County is not an "interested person" entitled to file objections to the applications here.

### III.

¶34        Under A.R.S. § 45-172(A), "any interested person" may file objections to severance and transfer applications on the grounds that they violate the "limitations and conditions" of that statute. Mohave County does not qualify as an "interested person" and it has not challenged the applications as contrary to any of the requirements of § 45-172(A). ADWR did not err in denying the County's objections.

¶35        We vacate the judgment of the superior court and affirm ADWR's final decision, which is not subject to further appeal. In the superior court and before this Court, ADWR requested an award of attorney fees pursuant to A.R.S. § 12-348.01. Because ADWR is the successful party, we grant the request but remand the case to the superior court for a determination of the amount of the award and other proceedings consistent with this opinion.