554 P.2d 1288

Keith TURLEY, Karl Abel, Darwin Aycock, Daniel Greengard, James White, Appellants,

v.

Wesley BOLIN, as Secretary of State of the State of Arizona, and Arizonans for Safe Energy, Appellees.

No. 1 CA–CIV 3599.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 20, 1976.

Snell & Wilmer, by Mark Wilmer, Phoenix, for appellants.

Davich & Pollock by Otis Smith, Phoenix, for appellees.

## OPINION

HAIRE, Chief Judge, Division 1.

By action filed in the Maricopa County Superior Court, appellants sought to enjoin appellee Secretary of State from placing upon the ballot for the November 2, 1976 general election a proposed initiative measure relating to the construction of nuclear power generating facilities.[1] The basis for the appellants' claimed right to injunctive relief, insofar as pertinent to the issue subsequently raised on this appeal, centered upon the admitted failure of the petition circulators to comply with the five month

1. The appellee Secretary of State has designated the initiative proposal as follows:

"#200

AN ACT PROPOSED BY INITIATIVE PETITION

'TO REQUIRE LEGISLATIVE APPROVAL OF ANY NUCLEAR FACILITY CERTIFIED BY ARIZONA POWER PLANT AND TRANSMISSION LINE SITING COMMITTEE; ALLOWING NUCLEAR FACILITIES TO BE BUILT WHEN EFFECTIVENESS OF SAFETY SYSTEMS IS DEMONSTRATED, QUESTIONS OF WASTE STORAGE ARE ANSWERED, CURRENT FEDERAL LIMITS ON FINANCIAL LIABILITY ARE REMOVED AND FULL COMPENSATION ASSURED.'"

filing requirement imposed by the provisions of A.R.S. § 19–121D, as follows:

"D. Initiative petitions which have not been filed with the secretary of state as of five p. m. on the day five months prior to the ensuing general election after their issuance shall be null and void, but in no event shall the secretary of state accept in initiative petition which was issued for circulation more than twenty-four months prior to the general election at which the measure is to be included on the ballot."

Although the petitions were not timely filed when measured against the five month filing requirement of § 19–121D, *supra*, they were timely filed if the governing standard is that provided in Ariz. Const. art. 4, pt. 1, § 1(4), as follows:

"(4) [*Initiative and referendum petitions; filing*] All petitions submitted under the power of the Initiative shall be known as Initiative Petitions, and shall be filed with the Secretary of State not less than four months preceding the date of the election at which the measures so proposed are to be voted upon."

The petition circulators had been advised in writing by the appellee Secretary of State that the due date for filing initiative petitions was July 2, 1976. This due date was apparently specified by the Secretary of State in reliance upon an opinion of the Attorney General of Arizona to the effect that A.R.S. § 19–121D was invalid and that the constitutional provision governed. *See* Attorney General Opinion No. 74–5–L(R–10), February 1, 1974.

Faced with the problems created by the conflicting time limitations, the trial judge entered the following written judgment:

"IT IS ORDERED finding that the provision contained in A.R.S. § 19–121D requiring filing of initiative petitions no later than 5:00 P.M. on the day *five months* prior to the ensuing general

election is invalid by virtue of the conflict between such provision and the provision in Article 4, Part 1, § 1(4) of the Arizona Constitution which provides that initiative petitions shall be filed with the Secretary of State not less than *four months* preceding the date of the election.

"IT IS FURTHER ORDERED finding that the initiative petitions which are the subject of this action were filed not less than four months preceding the date of the election."

Appellants initially sought review of the trial court's judgment by filing a special action petition in the Arizona Supreme Court, but that Court refused to accept jurisdiction. The matter was then brought to this Court on appeal, and appellants immediately filed a motion requesting (1) the issuance of an injunction pursuant to the provisions of Rule 62(c)[2] enjoining the Secretary of State from proceeding with the printing of the ballots pending appeal, and (2) that the appeal procedures be expedited. At the time set for hearing on appellants' motion, after hearing oral argument and considering memoranda filed by the parties, this Court entered its order denying the requested injunctive relief. However, in view of the broad public interest and the time pressures occasioned by the pending general election which would make the question moot absent immediate appellate disposition, this Court granted the motion to expedite the appeal. Upon stipulation of the parties, the appeal was then deemed submitted for decision on the merits. We hold that the judgment entered by the trial court must be affirmed.

Recognizing that the initiative and referendum provisions of the Arizona Constitution are self-executing,[3] appellants correctly point out that this does not necessarily mean that the legislature is prohibited from enacting implementing legislation

---

2. Ariz.Rules Civ.Proc. 62(c).

3. Art. 4, Part 1, § 1(15) provides as follows: "(15) [*Self-executing*] This section of the Constitution shall be, in all respects, self-executing."

with respect to the constitutional rights given. As stated by the Arizona Supreme Court in *Direct Sellers Association v. McBrayer*, 109 Ariz. 3, 503 P.2d 951 (1972):

> "We hold that the fact that a constitutional provision is self-executing does not forever bar legislation on the subject. If such legislation does not unreasonably hinder or restrict the constitutional provision and if the legislation reasonably supplements the constitutional purpose, then the legislation may stand." 503 P.2d at 953

In its opinion in *Direct Sellers Association v. McBrayer, supra,* the Arizona Supreme Court upheld the validity of legislation requiring that circulators of referendum petitions be qualified electors, notwithstanding the absence of any constitutional requirement to that effect.

The question thus becomes whether the statutory provision here involved implements or supplements the above-quoted constitutional provision and does not unreasonably hinder or restrict the initiative rights given to the people by the Arizona Constitution. This must be determined with a view to the relationship evidenced by our constitution between the exercise by the legislature of the legislative rights granted to it, and the independent exercise by the people of their reserved rights. When enacting the constitution, the people of this state did not vest all legislative authority in the legislature, but rather expressly reserved in the people:

> " . . . the power to propose laws and amendments to the Constitution and to enact or reject such laws and amendments at the polls, *independently of the Legislature* . . . ." (Emphasis added). Ariz. Const. art. 4, pt. 1, § 1(1)

As stated by the Arizona Supreme Court in *Whitman v. Moore,* 59 Ariz. 211, 125 P.2d 445 (1942), the provisions of the Arizona Constitution relating to the reservation by the people of initiative and referendum rights show:

> " . . . beyond the possibility of contradiction that the people themselves deliberately and intentionally announced that, by its adoption, they meant to exercise their supreme sovereign power directly to a far greater extent than had been done in the past, and that the legislative authority, acting in a representative capacity only, was in all respects intended to be subordinate to direct action by the people." 125 P.2d at 450, 451

It is against this background that we must consider whether A.R.S. § 19–121D implements, or instead conflicts, with the initiative filing rights reserved by the constitution for the people.

■ Initially, we state that it is our opinion that the constitutional provision requiring that initiative petitions " . . . shall be filed . . . not less than four months preceding the date of the election. . . . " implies the reservation of a right in the people to file such petitions at any time prior to four months preceding the date of the pertinent election. Appellants do not seriously question that, in the absence of legislation, such a right must be implied from the constitutional language, but rather, contend that the additional statutory restriction on filing does not offend the test set forth in *Direct Sellers Association v. McBrayer, supra,* arguing as follows:

> "We believe the constitutional purpose which the 'four months' provisions was intended to achieve must have been to insure that a reasonable amount of time would elapse between the filing of the petitions and the election to allow (a) the electorate to understand and become familiar with the proposed measure and (b) to permit proper and reasonable investigation of the petitions to expose fraud and insufficiency of the petitions. * * *
>
> "When the constitutional provision 'not less than four months,' etc., was adopted the population of the State was a fraction of its present population and the number of offices to be filled at a general election was likewise but a fraction of the number on the ballot today.

"More importantly, the complexity of the printing process had not been increased many fold by the requirement that names of candidates for each office must be rotated to avoid possible advantage to a candidate from first or top position on the ballot.

"We must assume that those who wrote and approved our constitution anticipated that our state would grow and intended to devise an instrument flexible enough to meet the requirements of that growth while preserving the fundamental principles stated in the document."

■ While the concerns voiced by appellants were in all probability among the important considerations influencing the framers of our constitution, we are not persuaded that this reasoning is sufficient to justify the statutory changes sought here. It appears to this Court that the substantial shortening of the filing period which would result from our holding § 19–121D valid, could seriously limit the reserved rights of the people to initiate legislation. For example, if the required filing date is to be five months before the next general election, rather than the four months provided by the constitution, the time interval between the normal recessing of a legislative session and the required filing date would necessarily be reduced by one month. We cannot say that this substantial reduction when viewed in this context would not "unreasonably hinder or restrict" the right of the people to initiate legislation when disappointed by the failure of their elected representatives to pass desired legislation prior to recessing.

This Court's research and the memoranda filed by counsel have brought to light only one decision directly in point—that of the Colorado Supreme Court in *Yenter*

*v. Baker*, 126 Colo. 232, 248 P.2d 311 (1952).[4] There the Colorado constitution provided that:

"Initiative petitions * * * shall be * * * filed with the secretary of state at least four months before the election at which they are to be voted upon." 248 P.2d at 313

A subsequently enacted statute provided that no petition for any initiative act would be of any force or effect " . . . unless filed with the secretary of state at least eight months before the election at which they are to be voted upon." The Colorado court held that the statute was invalid, stating:

"The legislative requirement that petitions must be filed at least *eight* months prior to election beyond question narrows and limits the right provided in the Constitution to file them not less than *four* months prior to the election. The fact, as urged, that proponents of other amendments in the past have been able to procure sufficient signers within the shorter period does not support a conclusion that the right provided by the Constitution is not seriously curtailed, narrowed or limited thereby.

"Third, the rights reserved by the people included that to enact constitutional amendments 'independent of the general assembly'. 'Independent: not dependent; not subject to control, restriction, modification, or limitation from a given outside source.' Black Law Dictionary. To construe the constitutional amendment as contended by plaintiffs in error would make the initiative process in a vital provision *dependent* upon general assembly. It would necessarily result either in giving the general assembly authority to modify and limit the minimum time for filing petitions to such an ex-

---

4. Additional decisions of peripheral interest are *State ex rel. Kiehl v. Howell*, 77 Wash. 651, 138 P. 286 (1914), and *Kays v. McCall*, 244 Or. 361, 418 P.2d 511 (1966). This Court does not consider the rationale of those decisions to be contrary to the result we reach here.

**350**

tent as virtually to nullify the constitutional provision, or in putting the burden and responsibility on the court to determine whether the legislative limitation was reasonable or unreasonable, and thus ultimately would require that the petitions be filed at such time prior to the ·election as might be determined by a court. Plainly it was not the intent of the people, in making the self-executing constitutional amendment, to leave the fixing of the time within which petitions must be filed either to the legislature or to the courts. The people reserved to themselves the power of initiative enactment." (Emphasis in original). 248 P. 2d at 314, 315

We find the reasoning of the Colorado court persuasive.

In finding § 19–121D invalid, we necessarily reject appellants' contention that by using the words " . . . not less than four months . . . ." the framers of the constitution intended to provide a flexible filing standard subject to change at will by the legislature, whenever changing conditions might appear to the legislature to justify a departure from the initially mandated constitutional standard. Admittedly, *when considered alone,* the words used could justify such an interpretation. However, as we have indicated previously in this opinion, this constitutional filing limitation must be considered in the context of the important legislative rights reserved in the people—rights which are not to be considered as being subordinate to any legislative rights vested in the legislature. When considered in that context, the constitutional provision must be construed as reserving a minimum filing right in the people, not subject to future derogation by the legislature.

The judgment entered by the trial court is affirmed.

EUBANK and SCHROEDER, JJ., concurring.