IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

CAREY D. DOBSON, WILLIAM EKSTROM, TED A. SCHMIDT AND
JOHN THOMAS TAYLOR III,
*Petitioners,*

*v.*

STATE OF ARIZONA, EX REL.,
COMMISSION ON APPELLATE COURT APPOINTMENTS,
*Respondent.*

No. CV-13-0225-SA
Filed September 13, 2013

Special Action
**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL:

Paul F. Eckstein, Joel W. Nomkin, D. Andrew Gaona, Perkins Coie LLP, Phoenix; Stanley G. Feldman, Haralson, Miller, Pitt, Feldman & McAnally, PLC, Tucson; Frank X. Gordon, Jr., Roush McCracken Guerrero & Miller, Phoenix; Mark I. Harrison, Osborn Maledon PA, Phoenix; Charles E. Jones, Phoenix; Ruth McGregor, Phoenix; James Moeller, Phoenix; and Thomas A. Zlaket, Thomas A. Zlaket PLLC, Tucson, for Dobson, et al.

Thomas C. Horne, Arizona Attorney General, G. Michael Tryon, Assistant Attorney General, Evan Hiller, Assistant Attorney General, Phoenix, for State of Arizona

Timothy M. Hogan, Joy Herr-Cardillo, Phoenix, for Amicus Curiae Arizona Center for Law in the Public Interest

Lawrence A. Kasten, Lewis and Roca LLP, Phoenix; and Matthew Menendez, New York, for Amici Curiae Brennan Center for Justice at N.Y.U. Law School and Justice at Stake

VICE CHIEF JUSTICE BALES authored the opinion of the Court, in which JUSTICE PELANDER, JUSTICE BRUTINEL, JUSTICE TIMMER and JUDGE NORRIS* joined.

_____

VICE CHIEF JUSTICE BALES, opinion of the Court:

¶1        Arizona's Constitution establishes the Commission on Appellate Court Appointments and requires the Commission to submit "not less than three" nominees to the governor for her appointment to fill an appellate judicial vacancy.  Ariz. Const. art. 6, §§ 36-37.  Recently enacted House Bill (H.B.) 2600 directs the Commission to submit "the names of at least five persons" to the governor, unless an applicant is rejected by a two-thirds vote of the Commission, in which case it may submit fewer than five names.  2013 Ariz. Sess. Laws, ch. 23,   § 1 (1st Reg. Sess.).  Because H.B. 2600 directly conflicts with Arizona's Constitution, we hold that the statute is unconstitutional.

**I.**

¶2        In 1974, Arizona voters approved Proposition 108, which amended the Arizona Constitution and introduced merit selection into Arizona's judicial selection process.  Ariz. Sec'y of State, *1974 Publicity Pamphlet* 29 (1974).  Before the adoption of Proposition 108, all of Arizona's state judges were elected by popular vote.  Proposition 108 created the Commission on Appellate Court Appointments, which now consists of ten non-attorney and five attorney members – all appointed by the governor and confirmed by the Senate – and is chaired by the chief justice.  Ariz. Const. art. 6, § 36(A).  The Commission is charged with evaluating applicants for appointment to Arizona appellate courts in "an impartial and objective manner," *id.* § 36(D), and is directed to "consider the diversity of the state's population" but its "primary consideration shall be merit."  *Id.*

¶3        Based on its review, which includes public hearings, public interviews, and public comment, the Commission must recommend "not less than three" nominees to the governor.  Ariz. Const. art. 6, §§ 36-37. The Commission's "[v]oting shall be in a public hearing."  *Id.* § 36(D).  No more than two nominees can be from the same political party, unless there are more than four nominees, in which case no more than sixty percent

can be from the same political party. *Id*. § 37(A). The governor is required to appoint one of the nominees to fill the judicial vacancy. *Id*. § 37(C); *cf. id*. § 41 (establishing a similar merit selection process for superior court judges in counties "having a population of two hundred fifty thousand persons or more").

¶4 In April 2013, the legislature passed and the governor approved H.B. 2600, which would alter Arizona's judicial nomination process by requiring the Commission to submit at least five nominees to the governor, unless the Commission rejects an applicant by a two-thirds vote, in which case the Commission may submit fewer than five nominees. A similar ballot proposition was rejected by the voters in 2012. That proposition would have amended the constitution to require the Commission to submit eight candidates to the governor for each judicial vacancy, unless two-thirds of the Commission voted to reject a candidate and to submit fewer than eight names. Ariz. Sec'y of State, *2012 Publicity Pamphlet* 21-22 (2012), *available at* http://www.azsos.gov/election/2012/Info/PubPamphlet/english/e-book.pdf.

¶5 Four members of the Commission on Appellate Court Appointments filed this special action asking the Court to declare H.B. 2600 unconstitutional and to enjoin the Commission from applying the statute. They bring the action as individual commissioners and not on behalf of the Commission as a whole. The Commission is a nominal defendant and takes no position in this litigation.

## II.

¶6 This Court has original jurisdiction over "mandamus, injunction and other extraordinary writs to state officers." Ariz. Const. art. 6, § 5(1). Such jurisdiction is discretionary and granted through a special action petition. *Randolph v. Groscost*, 195 Ariz. 423, 425 ¶ 6, 989 P.2d 751, 753 (1999).

¶7 The State concedes that this Court could grant mandamus relief by directing the Commission to comply with a ruling on the merits, but it argues the case should be refiled in superior court for the development of a factual record. Resolving this case, however, does not involve disputed facts. Special action jurisdiction is appropriate here

because the petition presents purely legal questions of statewide importance that turn on interpreting Arizona's Constitution. *See id.* (accepting jurisdiction when the "dispute involves a matter of substantial public importance, raises only issues of law, and requires the interpretation of a provision of the Arizona Constitution").

¶8 Additionally, special action jurisdiction is appropriate because the case requires an immediate and final resolution. *See Ingram v. Shumway*, 164 Ariz. 514, 516, 794 P.2d 147, 149 (1990) (accepting special action jurisdiction when the case required "final resolution in a prompt manner"). Petitioners have no power to resolve the constitutionality of H.B. 2600 on their own, and beginning September 13, 2013, they will be subject to its directives. Accordingly, we accept jurisdiction.

### III.

¶9 The State argues that even if we accept jurisdiction, Petitioners have no standing to sue. We disagree. Under Arizona's Constitution, standing is not jurisdictional, but instead is a prudential doctrine requiring "a litigant seeking relief in the Arizona courts [to] first establish standing to sue." *Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 19, 81 P.3d 311, 316 (2003). By contrast, in federal court, standing requirements are rooted in Article III of the United States Constitution, which limits jurisdiction to "cases or controversies." *Id.* at 524-25 ¶¶ 17-18, 81 P.3d at 315-16. Arizona's Constitution has no counterpart "case or controversy" requirement. It follows that this Court is informed, but not bound, by federal standing jurisprudence. *See id.* at 525 ¶ 22, 81 P.3d at 316. Our decision to recognize standing turns on "questions of prudential or judicial restraint." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985).

¶10 The State asserts that Petitioners have no standing because they are attempting to bring organizational claims without authorization from their "organization," something we barred individual legislators from doing in *Bennett*. 206 Ariz. at 527 ¶ 29, 81 P.3d at 318. In that case, we held that four state legislators lacked standing to bring a special action challenging the governor's exercise of line-item vetoes because the legislators had not alleged a particularized injury and had not been authorized to act on behalf of their respective chambers. *Id.* Although the

4

legislators supported the items vetoed by the governor, we held that the injury was "wholly abstract and widely dispersed" and not sufficiently particularized to give rise to individual standing. *Id*. at 526-27 ¶ 28, 81 P.3d at 317-18 (quoting *Raines v. Byrd*, 521 U.S. 811, 829 (1997)).

**¶11** *Bennett* is distinguishable. Here, Petitioners have identified a particularized injury and do not purport to bring claims on behalf of the Commission as a whole. H.B. 2600 requires Petitioners, as individuals, to execute directives they believe run afoul of their constitutional obligations as Commission members. *See* A.R.S. § 38-231 (A), (E) (requiring "all officers . . . of all . . . commissions" to "solemnly swear (or affirm)" an oath that he or she "will support the Constitution of the United States and the Constitution and laws of the State of Arizona . . . ."); *see also* A.R.S. § 38-101(3) (defining "public officer" to include a "member of any board or commission"). Without standing to raise the constitutional question in court, Petitioners would have no means of redress. That standing exists under these circumstances is implicitly recognized by Arizona's declaratory judgment statute, which provides that a person whose "rights, status or other legal relations" are affected by a statute may seek declaratory relief regarding the statute's validity. A.R.S. § 12-1832; c*f. Merrill v. Phelps*, 52 Ariz. 526, 529, 84 P.2d 74, 76 (1938) (noting that action under the declaratory judgment statute was "simplest and the best way" of resolving conflicting claims regarding statutory and constitutional authority of public officials).

**¶12** Petitioners also allege individual injury based on H.B. 2600's requirement of a supermajority vote to send fewer than five nominees to the governor. Before H.B. 2600, commissioners by a mere majority vote could block a fourth and fifth nominee from being submitted to the governor. H.B. 2600 renders a commissioner's opposition to a candidate ineffective unless the commissioner can secure the support of a two-thirds majority. This material change further supports a finding that Petitioners have standing. Unlike the situation in *Bennett*, H.B. 2600 does not concern the impact of another branch of government on the collective action of the Commission, but instead directly alters how the votes of individual commissioners will determine the Commission's action. *Cf. Bennett*, 206 Ariz. at 526 ¶ 26, 81 P.3d at 317 (noting that "no legislator's vote was nullified by interference in the legislature" and instead bills were duly enacted and transmitted to the governor). Accordingly, we conclude that Petitioners have alleged particularized injuries sufficient to establish

standing.

**IV.**

**¶13** On its face, H.B. 2600 conflicts with our state constitution. Arizona's Constitution provides that the Commission will nominate no fewer than three persons for each judicial vacancy, unless a majority of the Commission votes to nominate additional persons. Ariz. Const. art. 6, §§ 36(D), 37(A). H.B. 2600, in contrast, directs the Commission to submit at least five nominees, unless the Commission rejects an applicant by a two-thirds vote. H.B. 2600, § 1. This requirement fundamentally changes the selection process set forth in the constitution.

**¶14** Nevertheless, the State argues that H.B. 2600 represents a mere procedural change to the nomination process. To support its position, the State cites *Direct Sellers Ass'n v. McBrayer*, in which the Court upheld a statute requiring circulators of referendum petitions to be qualified electors. 109 Ariz. 3, 5, 503 P.2d 951, 953 (1971). The Arizona Constitution declares that its referendum provisions "shall be, in all respects, self-executing," Ariz. Const. art. 4, pt. 1, § 1(16), but it does not address the qualifications of petition circulators. In this context, *McBrayer* held that legislation is permissible if it "reasonably supplements the constitutional purpose" and "does not unreasonably hinder or restrict the constitutional provision . . . ." 109 Ariz. at 5, 503 P.2d at 953. *McBrayer* did not concern legislation that directly conflicted with any constitutional provision. *Id.*

**¶15** Because H.B. 2600 conflicts with Article 6, Sections 36 and 37, the court of appeals' analysis in *Turley v. Bolin* is more instructive. 27 Ariz. App. 345, 554 P.2d 1288 (1976); *see also State v. Roscoe*, 185 Ariz. 68, 72, 912 P.2d 1297, 1301 (1996) (distinguishing *McBrayer* and adopting the *Turley* analysis when a legislative act infringes on a voter-enacted constitutional provision). *Turley* involved a statute requiring initiative petitions to be filed with the Secretary of State's office not less than five months before an election. 27 Ariz. App. at 347, 554 P.2d at 1290. The Arizona Constitution, however, provides that such petitions shall be filed "not less than four months" before an election. *Id.* (quoting Ariz. Const. art. 4, pt. 1, § 1(4)). The court struck down the statute as unconstitutional, holding that it "unreasonably hinder[ed] or restrict[ed] the constitutional provision." *Id.* at 348, 554 P.2d at 1291 (quoting *McBrayer*, 109 Ariz. at 5, 503 P.2d at 953). It reasoned that any attempt by the legislature to alter the

minimum filing time must fail because "th[e] constitutional filing limitation must be considered in the context of the important legislative rights reserved in the people – rights which are not to be considered as being subordinate to any legislative rights vested in the legislature." *Id.* at 350, 554 P.2d at 1293.

¶16 Under *Turley*'s analysis, H.B. 2600 cannot be said to "reasonably supplement" Arizona's Constitution. Instead, H.B. 2600 materially changes the process of submitting judicial nominees to the governor as established in Article 6, Section 37. It works a fundamental change in the constitutionally prescribed balance of power between the Commission and the governor. By increasing the number of nominees the Commission must submit, H.B. 2600 simultaneously increases the governor's discretion and narrows the commissioners' constitutionally granted discretion to nominate no more than the three candidates whom they determine best meet the constitutionally mandated selection criteria. *See supra* ¶ 2. Further, H.B. 2600 imposes a two-thirds voting requirement in a context not authorized by the constitution. *Cf.* Ariz. Const. art. 6, § 36(D) (requiring a two-thirds vote for the Commission to hold an executive session). Even if the change were "merely procedural," the legislature has no authority to statutorily mandate procedures inconsistent with Arizona's Constitution. *Turley*, 27 Ariz. App. at 350, 554 P.2d at 1293; *cf.* Ariz. Const. art. 6, § 36(E) (authorizing the Supreme Court to adopt rules of procedure for the Commission); Unif. R.P. Comm'ns on App. and Trial Ct. Appointments 5(f) (recognizing that commissions may act by majority vote on any matter other than decision to meet in executive session).

¶17 When a state statute conflicts with Arizona's Constitution, the constitution must prevail. *See Windes v. Frohmiller*, 38 Ariz. 557, 561, 3 P.2d 275, 277 (1931) (stating "[t]his court will not violate the people's trust by attempting to subvert their constitution to any legislative enactment"). If we determine that part of a statute is unconstitutional, we generally consider whether other valid parts can be upheld under the severability doctrine. *See Randolph*, 195 Ariz. at 427 ¶ 14, 989 P.2d at 755. Section 1 of H.B. 2600 is to be codified as A.R.S. § 12-3151(A) – (C). Although section 2 of H.B. 2600 is a severability clause, the State has not argued that the statute can be upheld in part. We conclude that the provisions of section 1 of H.B. 2600 are not severable. Newly enacted § 12-3151(A) concerns the appellate court nominating commission as just discussed, but our analysis

establishes that § 12-3151(B), which concerns the trial court nominating commissions, similarly violates the constitution and therefore cannot be upheld. *See* Ariz. Const. art. 6, § 41(J). Section 12-3151(C), which requires the commissions to maintain individual voting records for each commissioner, also is not severable because it conflicts with the constitution's provisions regarding the commissions' rules of procedure. *See* Ariz. Const. art. 6, §§ 36(E), 41(K).

## V.

**¶18**      Petitioners have requested an award of attorney's fees under the private attorney general doctrine. *See Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). That doctrine "is an equitable rule which permits courts in their discretion to award attorney's fees to a party who has vindicated a right that: 1) benefits a large number of people; 2) requires private enforcement; and 3) is of societal importance." *Id*. The State has not disputed that a fee award would be appropriate if Petitioners prevail.

**¶19**      Petitioners have succeeded in showing that the legislature's attempted changes to the judicial nomination process violate Arizona's Constitution. A reasonable fee award is appropriate. We note, however, that Petitioners withdrew one of their two arguments challenging H.B. 2600 after the State filed its response, and we limit the award to time spent by those attorneys who were principally and substantially involved in briefing Petitioners' successful arguments.

## VI.

**¶20**      We hold that H.B. 2600 is unconstitutional because it directly conflicts with Arizona's Constitution. We enjoin the Commission from applying the statute and award reasonable attorney's fees to Petitioners upon compliance with Arizona Rule of Civil Appellate Procedure 21.

---

* Chief Justice Berch recused herself from this case. Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Patricia K. Norris, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.