VICE CHIEF JUSTICE BRUTINEL, opinion of the Court:
 

 ¶1 The Arizona Corporation Commission ("Commission") has broad authority under A.R.S. § 40-285(A) to approve the sale or disposition of a public service corporation's assets. In this special action, we hold that § 40-285(A) does not give the Commission power over a city's exercise of eminent domain. Accordingly, we vacate the portion of the Commission's March 30, 2018 order requiring the public utility to apply for Commission approval of the proposed condemnation.
 

 I. BACKGROUND
 

 ¶2 In October 2017, the City of Surprise ("City") entered into a letter of intent with Circle City Water Company, L.L.C. ("Circle City"), documenting the City's intent to condemn substantially all the assets of Circle City, including the right to almost four thousand acre-feet of water per year from the Central Arizona Project ("CAP"). Pursuant to statute, Surprise voters authorized the condemnation and the Surprise City Council approved the filing of a condemnation action. A residential developer contends that Circle City is obliged under an existing contract to allocate its CAP water for a planned development. Upon inquiry by the developer, the City advised that it has no obligation to provide water under the existing contract. The developer then asked the Commission to enter an order preventing the sale of Circle City's CAP allocation to the City.
 

 ¶3 The Commission opened an investigation. On March 30, 2018, the Commission ordered Circle City to file an application under § 40-285 and Arizona Administrative Code ("A.A.C.") R14-2-402(D), seeking Commission authorization "to abandon, sell, lease, transfer, or otherwise dispose of its utility." At the time of the order, the Commission was aware that the negotiations between the City and Circle City were intended to result in condemnation, not a sale. Circle City filed the application under protest. Commission staff determined that Circle City did not fully comply with the March 30 order by failing to include a copy of the draft condemnation agreement between Circle City and the City. At the Commission's direction, Circle City provided a copy of the draft agreement under seal. The Commission then required Circle City to confirm in writing whether the City would assume Circle City's water contract with the developer.
 

 ¶4 Shortly thereafter, the City filed this special action, alleging the Commission acted
 without jurisdiction in entering the March 30 order. This Court stayed further administrative proceedings pending resolution of this case.
 

 ¶5 We accepted jurisdiction over this special action to clarify the scope of the Commission's authority over eminent domain proceedings pursuant to A.R.S. § 40-285(A). We have jurisdiction pursuant to article 6, section 5(1) of the Arizona Constitution and A.R.S. §§ 12-2001 and 12-2021.
 

 II. DISCUSSION
 

 A. Jurisdiction
 

 ¶6 This Court has original jurisdiction to issue "mandamus, injunction and other extraordinary writs to state officers." Ariz. Const. art. 6, § 5 (1);
 
 see also
 
 A.R.S. §§ 12-2001, -2021. Such jurisdiction is discretionary and is requested through a special action petition.
 
 Dobson v. State ex rel. Comm'n on Appellate Court Appointments
 
 ,
 
 233 Ariz. 119
 
 , 121 ¶ 6,
 
 309 P.3d 1289
 
 , 1291 (2013). Special action jurisdiction is appropriate in cases that involve "purely legal questions of statewide importance" or that require an "immediate and final resolution,"
 

 id.
 

 at 121 ¶¶ 7-8,
 
 309 P.3d at 1291
 
 , and particularly appropriate when a defendant "has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority," Ariz. R.P. Spec. Act. 3(b). But special action jurisdiction is not appropriate when parties have an "equally plain, speedy, and adequate remedy by appeal."
 
 Id.
 
 1(a).
 

 ¶7 Here, the scope of Commission authority involves a purely legal question of statutory interpretation: whether the Commission has exceeded its statutory authority. The City cannot presently appeal the Commission's order because it is not a party to the administrative proceedings, and the City has no other means to challenge the Commission's actions. For those reasons, special action review is appropriate.
 
 See
 

 Ariz. Corp. Comm'n v. State ex rel. Woods
 
 ,
 
 171 Ariz. 286
 
 , 288,
 
 830 P.2d 807
 
 , 809 (1992) (granting special action review because "this court can best serve the public interest and principles of judicial economy by resolving fundamental legal questions regarding the Commission's constitutional power at this time").
 

 B. Standing
 

 ¶8 The Commission asserts that the City lacks standing to bring this action and the City's case is not ripe for decision. This Court is "not constitutionally constrained to decline jurisdiction based on lack of standing" because the Arizona Constitution, unlike the Federal Constitution, contains no "case or controversy" requirement.
 
 Sears v. Hull
 
 ,
 
 192 Ariz. 65
 
 , 71 ¶ 24,
 
 961 P.2d 1013
 
 , 1019 (1998). Whether to deny standing in Arizona is a matter of "prudential or judicial restraint."
 
 Dobson
 
 ,
 
 233 Ariz. at
 
 122 ¶ 9,
 
 309 P.3d at 1292
 
 (quoting
 
 Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.
 
 ,
 
 148 Ariz. 1
 
 , 6,
 
 712 P.2d 914
 
 , 919 (1985) ). Our courts exercise restraint to ensure they "refrain from issuing advisory opinions, that cases be ripe for decision and not moot, and that issues be fully developed between true adversaries."
 
 Bennett v. Brownlow
 
 ,
 
 211 Ariz. 193
 
 , 196 ¶ 16,
 
 119 P.3d 460
 
 , 463 (2005).
 

 ¶9 The Commission argues that because it has taken no action against the City and has not attempted to "regulate the condemnation," the City has not suffered any injury. But its March 30 order requiring Circle City to file an application pursuant to § 40-285"for authority to abandon, sell, lease, transfer, or otherwise dispose of its utility" in the face of the City's proposed condemnation constitutes an injury to the City. While facially directed only at Circle City, the assertion of authority under that statute, if valid, would give the Commission the authority to void the City's condemnation action. Further, standing is suggested by Arizona's declaratory judgment statute, which provides that a party whose "rights, status or other legal relations are affected by a statute" may seek declaratory relief regarding the statute's construction. A.R.S. § 12-1832 ;
 
 see also
 
 id.
 

 § 12-1842 ("This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.");
 

 Dobson
 
 ,
 
 233 Ariz. at
 
 122 ¶ 11,
 
 309 P.3d at
 
 1292 ;
 
 cf.
 

 Merrill v. Phelps
 
 ,
 
 52 Ariz. 526
 
 , 529,
 
 84 P.2d 74
 
 (1938) (noting that action under the declaratory judgment statute was "the simplest and the best way" of resolving conflicting claims regarding statutory and constitutional authority of public officials). The Commission's indirect assertion of regulatory authority over the City is sufficient injury to provide standing.
 

 C. Standard of Review
 

 ¶10 We review the interpretation of statutes de novo, seeking to effectuate the legislature's intent.
 
 Stambaugh v. Killian
 
 ,
 
 242 Ariz. 508
 
 , 509 ¶ 7,
 
 398 P.3d 574
 
 , 575 (2017). If the statute is subject to only one reasonable interpretation, we apply it without further analysis.
 

 Id.
 

 To make this determination, we look to the statute's words and context.
 

 Id.
 

 If the statute is susceptible to more than one reasonable interpretation, we consider secondary interpretive principles such as "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose."
 
 State ex rel. Polk v. Campbell
 
 ,
 
 239 Ariz. 405
 
 , 406 ¶ 5,
 
 372 P.3d 929
 
 , 930 (2016) (quoting
 
 Ariz. Citizens Clean Elections Comm'n v. Brain
 
 ,
 
 234 Ariz. 322
 
 , 325 ¶ 11,
 
 322 P.3d 139
 
 , 142 (2014) ).
 

 D. Commission Authority Over Condemnation Proceedings
 

 ¶11 The Commission argues it has authority to regulate condemnations under § 40-285(A) and A.A.C. R14-2-402(D). Section 40-285(A) provides:
 

 A public service corporation shall not sell, lease, assign, mortgage or otherwise dispose of or encumber the whole or any part of its railroad, line, plant or system necessary or useful in the performance of its duties to the public ... without first having secured from the commission an order authorizing it so to do. Every such disposition, encumbrance or merger made other than in accordance with the order of the commission authorizing it is void.
 

 A.A.C. R14-2-402(D)(1) provides that "[a] utility shall not abandon, sell, lease, transfer, or otherwise dispose of its facilities or operation without first obtaining authority therefor from the Commission." The City argues § 40-285(A) does not apply because the statutory language does not reference condemnation proceedings and because a condemnation is neither a sale nor other voluntary transfer, as the statute otherwise contemplates. The Commission asserts that the phrase "or otherwise dispose of" is sufficiently broad to include a transfer resulting from a condemnation. Because § 40-285(A) does not expressly include transfers through condemnation proceedings, we must decide whether condemnations are included by the phrase "or otherwise dispose of."
 

 ¶12 The Commission's interpretation of "otherwise dispose of" is inconsistent with the context of the statute. "[S]ell, lease, assign" and "mortgage" are all voluntary transactions; a condemnation, in contrast, is an involuntary governmental taking of assets.
 
 See
 

 United Water N.M., Inc. v. N.M. Pub. Util. Comm'n
 
 ,
 
 121 N.M. 272
 
 ,
 
 910 P.2d 906
 
 , 909 ¶ 10, 910 ¶ 14 (1996) (rejecting the public utility commission's assumption of jurisdiction over the transfer of utilities from a public utility to a city, reasoning that the statute granting power to the commission contained terms-"sell, lease, rent, purchase or acquire"-addressing only voluntary acts). Even a so-called "friendly" condemnation is ultimately not voluntary because Circle City has no choice but to accede to the taking of its assets pursuant to court order.
 
 See
 
 A.R.S. §§ 12-1114(1), -1114(6), -1116(A);
 
 cf.
 

 United Water N.M., Inc.
 
 ,
 
 910 P.2d at
 
 910 ¶ 15 (stating "a contract or agreement for sale or purchase is a consensual, voluntary relationship" because "both a seller and a buyer have the right to select with whom each will contract, and
 
 neither can be forced to agree
 
 " (emphasis added) (quotation omitted)). And even if the parties can reach agreement, the City's exercise of the power of eminent domain requires it to pay just compensation for the assets condemned. Ariz. Const. art. 2, § 17 ;
 
 Salt River Project Agric. Improvement & Power Dist. v. Miller Park, L.L.C.
 
 ,
 
 218 Ariz. 246
 
 , 249 ¶ 11,
 
 183 P.3d 497
 
 , 500 (2008). Agreeing on just compensation rather than litigating the issue makes the condemnation no less coercive.
 

 ¶13 Our conclusion is supported by the interpretive canons
 
 expressio unius est exclusio alterius
 
 and
 
 noscitur a sociis
 
 .
 
 Expressio unius est exclusio alterius
 
 -the expression of one item implies the exclusion of others-is appropriate when one term is reasonably understood as an expression of all terms included in the statutory grant or prohibition.
 
 Jennings v. Woods
 
 ,
 
 194 Ariz. 314
 
 , 330 ¶ 81,
 
 982 P.2d 274
 
 (1999) ;
 
 see also
 
 Antonin Scalia & Bryan A. Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 107 (2012).
 
 Noscitur a sociis
 
 -a word's meaning cannot be determined in isolation, but must be drawn from the context in which it is used-is appropriate when several terms are associated in a context suggesting the terms have some quality in common.
 
 See
 

 Ariz. Dep't of Water Res. v. McClennen
 
 ,
 
 238 Ariz. 371
 
 , 376 ¶ 26,
 
 360 P.3d 1023
 
 (2015) ;
 
 see also
 
 Scalia & Garner,
 
 supra
 
 , at 195-96.
 

 ¶14 Applying the
 
 expressio unius
 
 canon, we infer that the legislature's decision to include the terms "sell, lease, assign," and "mortgage," but not "condemn" or any variant thereof was intentional. Similarly, the doctrine of
 
 noscitur a sociis
 
 requires us to read the phrase "otherwise dispose of" in light of its surrounding terms "sell, lease, assign" and "mortgage." We decline to stretch the phrase "otherwise dispose of" in § 40-285(A) to cover transfers so markedly different from those the legislature expressly included.
 

 ¶15 The Commission has no authority to regulate the City's utilities.
 
 See
 
 Ariz. Const. art. 15, §§ 2, 3 (excluding municipal corporations from the Commission's regulatory authority);
 
 Menderson v. City of Phoenix
 
 ,
 
 51 Ariz. 280
 
 , 283,
 
 76 P.2d 321
 
 (1938) ("We think that no plainer language could have been used by the makers of the Constitution to state that the constitutional powers conferred upon the Corporation Commission, in regard to the government and regulation of public utilities, were not intended to, and did not, include those owned and operated by municipal corporations of any character."). The Commission conceded before this Court that § 40-285(A) neither authorizes it "to participate in the condemnation proceedings" nor requires the City to obtain Commission permission to commence a condemnation. Nevertheless, it argues the statute allows it to order Circle City to provide information regarding its transfer of assets to the City so that the Commission itself can determine whether the transfer falls under its authority.
 

 ¶16 But the power to solicit information is nowhere conferred by the text of § 40-285(A), nor did the Commission merely solicit information. And if the Commission is correct that § 40-285(A) applies to eminent domain proceedings in any respect, then, by the plain language of the statute, Circle City must obtain Commission approval to transfer its assets to the City. Failure to obtain Commission approval would render the City's condemnation void. This would effectively create a Commission veto over municipal acquisition of utilities-a result at odds with our constitution's clear exclusion of municipalities from Commission regulation.
 
 See
 

 Menderson
 
 ,
 
 51 Ariz. at 283
 
 ,
 
 76 P.2d 321
 
 . The Commission's argument is therefore inconsistent with the statute's language, the Arizona Constitution, and the Commission's own recognition that it may not regulate municipal utilities.
 

 ¶17 The Commission's argument is also in tension with legislative intent in enacting § 40-285(A), which was "to prevent 'looting' of a utility's facilities and impairment of service to the public."
 
 Babe Invs. v. Ariz. Corp. Comm'n
 
 ,
 
 189 Ariz. 147
 
 , 151,
 
 939 P.2d 425
 
 , 429 (App. 1997) (citing
 
 Am. Cable Television, Inc. v. Ariz. Pub. Serv. Co.
 
 ,
 
 143 Ariz. 273
 
 , 277,
 
 693 P.2d 928
 
 , 932 (App. 1983) ). The constitutional requirement that public property generally be taken only for "public use" already prevents the City from "looting" any public utilities' assets to the detriment of the public.
 
 See
 
 Ariz. Const. art. 2, § 17 ;
 
 City of Phoenix v. Superior Court
 
 ,
 
 137 Ariz. 409
 
 , 411,
 
 671 P.2d 387
 
 , 389 (1983) ("[G]enerally no condemning body may exercise the power of eminent domain unless the property which is to be taken is to be put to a 'public use.' "). Applying § 40-285(A) to condemnations would render this constitutional guarantee wholly superfluous.
 

 ¶18 We find further support in the California Court of Appeal's interpretation of a statute nearly identical to § 40-285(A).
 
 See
 

 Am. Cable Television, Inc.
 
 ,
 
 143 Ariz. at 278
 
 ,
 
 693 P.2d at 932
 
 (finding § 40-285 consistent with § 851 of California's Public Utility Code). In
 
 People ex rel. Public Utilities Commission v. City of Fresno
 
 , the California Court of Appeal recognized that "eminent domain is an attribute of sovereignty and must not be restricted by judicial interpretation in the absence of a clear legislative intent to so restrict."
 
 254 Cal.App.2d 76
 
 ,
 
 62 Cal.Rptr. 79
 
 , 84 (1967). The statute in
 
 City of Fresno
 
 did not "precisely mention the taking of such property by a public entity through the exercise of the power of eminent domain."
 

 Id.
 

 As such, the statute permitted only a "very weak inference[ ]" that condemnation proceedings required commission approval.
 

 Id.
 

 The court found this weak inference untenable in light of a more specific statutory provision that "[u]nequivocally empower[ed] a city to condemn public utility property even though it ha[d] already been appropriated to a public use,"
 

 id.
 

 , and concluded that the general statute was therefore not a restriction on the city, nor did it prevent the city from exercising its right of eminent domain,
 

 id.
 

 at 87
 
 .
 

 ¶19 Here, as in
 
 City of Fresno
 
 , any inference of Commission power over eminent domain permitted by § 40-285(A) 's text is untenable in light of the City's express authorization to condemn public utilities.
 
 See
 
 A.R.S. § 9-511(C) ("The municipality may exercise the right of eminent domain either within or without its corporate limits for the purposes as stated in subsection A ....");
 

 id.
 

 § 9-516(B) ("The city or town which seeks to acquire the facilities of a public service corporation shall have the right to do so under eminent domain."). We decline to interpret § 40-285 as granting the Commission power over condemnations, thereby restricting the City's power of eminent domain, without clear legislative intent to do so.
 

 ¶20 Lastly, to the extent the Commission argues that A.A.C. R14-2-402(D) confers jurisdiction where the statute does not, we disagree. "The Corporation Commission has no implied powers and its powers do not exceed those to be derived from a strict construction of the Constitution and implementing statutes."
 
 Commercial Life Ins. Co. v. Wright
 
 ,
 
 64 Ariz. 129
 
 , 139,
 
 166 P.2d 943
 
 (1946).
 

 ¶21 The partial dissent does not dispute that the City has the right to condemn public utilities. Nor does it dispute that if a public utility refuses to cooperate in a sale of its assets, the City may invoke its power of eminent domain. Nonetheless, relying on dicta in a case from another jurisdiction, the dissent draws a line between contested and uncontested condemnations, giving the Commission authority over the latter but not the former. Effectively, the dissent empowers the Commission to veto a municipal corporation's eminent domain decision based only on the determination that it is not sufficiently adversarial. This approach makes sense only if we accept the dissent's selective use of dictionary definitions,
 
 see
 

 infra
 
 ¶ 42 (defining the power of eminent domain by selecting one of six entries for a term, ignoring the more relevant entries with contrary implications), and its strained application of the general terms canon,
 
 see
 
 Scalia & Garner,
 
 supra
 
 , at 101-03 (general terms canon instructs that terms like "
 
 all
 
 persons" and "
 
 any
 
 property" not be arbitrarily limited, but does not apply when context provides "
 
 some indication to the contrary
 
 " (emphasis added)). This we decline to do.
 

 ¶22 The dissent argues that a "friendly" condemnation, which it understands as one that "bears the indicia of a voluntary sale," is subject to the Commission's jurisdiction under § 40-285(A).
 
 Infra
 
 ¶ 41. Under the dissent's expansive view, if the condemnee-utility fails to object to either the inevitable condemnation or the amount of the City's monetary offer, the City must obtain Commission approval for the sale. But by drawing a line between contested and uncontested condemnations, giving the Commission authority over the latter but not the former, the dissent misconstrues the power of eminent domain. The government has the right to condemn property for public use irrespective of the condemnee's mindset. And this makes sense: why should a condemnee's willingness to sell his property limit the government's inherent power (and here, the City's express statutory right,
 
 see
 
 § 9-516(B)) to condemn
 it? Such a rule would "turn on serendipity,"
 
 Saban v. Ariz. Dep't of Trans.
 
 ,
 
 246 Ariz. 89
 
 , 94 ¶ 15,
 
 434 P.3d 1168
 
 , 1173 (2019), not on law.
 

 ¶23 More problematic, the dissent's view would expand the Commission's power well beyond the limits set by our legislature. By claiming that the Commission's "jurisdiction over a public utility is not extinguished until the transfer is complete,"
 
 infra
 
 ¶ 44, the dissent would give the Commission power over the condemnation proceeding itself. Not even the Commission makes this claim.
 

 ¶24 The dissent worries that our decision risks leaving Circle City customers (here, the developer) without service. Regardless, our constitution and our legislature bestowed the exclusive authority to regulate municipal utilities upon municipalities, along with the authority to condemn the property of public service corporations.
 
 See
 
 Ariz. Const. art. 15, §§ 2, 3 (excluding municipal corporations from the Commission's regulatory authority); § 9-511 (empowering municipal corporations to own, operate, and condemn utilities). This Court should not rewrite § 40-285(A) to expand the regulatory authority of the Commission.
 

 ¶25 The dissent's related concern that the legislative remedy of issuing a new certificate of convenience and necessity ("CC&N") "may prove illusory" because other providers "might" not exist has no basis in the record and we do not consider it.
 
 See
 

 State v. Bible
 
 ,
 
 175 Ariz. 549
 
 , 568,
 
 858 P.2d 1152
 
 , 1171 (1993) (noting that when "[t]he record does not show" a fact, "we will not speculate" about it).
 

 ¶26 The Attorney General opinion, relied on by the dissent, expressly disclaims the dissent's premise by acknowledging that a condemnation divests the Commission of jurisdiction over a utility and its CC & N. Op. Ariz. Att'y Gen. 62-7, at 12 (1962) (stating that "the Commission continues to retain jurisdiction over the utility and its certificate" during the pendency of a voluntary sale to a municipality but "[a]s an alternative procedure, the municipality may of course condemn" the utility to avoid Commission oversight).
 

 ¶27 To the extent the dissent suggests the City's proposed condemnation is fraudulent, an abuse of discretion, or otherwise improper with respect to the developer, any remedy for a claim to future water from Circle City is outside the scope of this litigation. We here express no opinion on the merits of such a claim or the remedies in such an action.
 

 ¶28 Our decision today does not preclude the Commission from continuing to regulate any portion of Circle City's service area left unserved following the City's condemnation. The Commission can issue a new CC&N to a public utility if the City declines to provide water service to customers in Circle City's service area, including the developer who originally contracted with Circle City.
 
 See
 
 § 9-516(D) ("[I]f [after the condemnation] the city or town refuses to provide utility service to a portion or part of the area or territory previously authorized to the public utility, the [Commission] may issue a new certificate of convenience and necessity or franchise to a public utility to provide utility service in that portion or part of the area or territory."). The Commission simply has no role to play in condemnations.
 

 III. CONCLUSION
 

 ¶29 We vacate paragraph 1 of the Commission's March 30, 2018 order. We deny the City and Circle City's requests for attorney fees.