NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

KRISTEN LEIGH HENRY, *Petitioner/Appellee,*

*v.*

DAVID SPETZLER, *Respondent/Appellant.*

No. 1 CA-CV 22-0172 FC
FILED 5-16-2023

Appeal from the Superior Court in Maricopa County
No. FC2020-001738
The Honorable Tracey Westerhausen, Judge

**VACATED**

COUNSEL

Mark J. DePasquale, P.C., Phoenix
By Mark J. DePasquale
*Co-Counsel for Respondent/Appellant*

Schmidt McElwee & Gordon, PLLC, Phoenix
By Paul G. Schmidt
*Co-Counsel for Respondent/Appellant*

Hallier Stearns, PLC, Phoenix
By Angela K. Hallier, Jason D. Brierley
*Co-Counsel for Petitioner/Appellee*

Jones, Skelton & Hochuli P.L.C., Phoenix
By Eileen Dennis GilBride
*Co-Counsel for Petitioner/Appellee*

———————————————

**MEMORANDUM DECISION**

Acting Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge David D. Weinzweig and Chief Judge Kent E. Cattani joined.

———————————————

**C A M P B E L L**, Judge:

¶1          David Spetzler (Father) appeals the family court's clarification order construing the extraordinary-care provisions of the consent decree dissolving his marriage to Kristen Henry (Mother). For the following reasons, we vacate the family court's order.

## BACKGROUND

¶2          On April 1, 2021, the parties dissolved their marriage by a consent decree incorporating their joint decision-making agreement and parenting plan (the parenting plan). Specific to this appeal, the consent decree provides that support for the parties' eldest child, who "has severe mental and physical disabilities," will continue "past the age of majority." In relevant part, the consent decree states:

> **Child Support**. Pursuant to the Child Support Worksheet . . ., [Mother] would pay [Father] $75 per month. [Father] will be paying the cost of [the eldest child's] child care expenses *(as set forth below)* and all private school tuition for [the younger children] through high school. The parties have agreed and acknowledge that *neither requires child support from the other given their respective economic circumstances* with the exception of the expenses Father shall pay, which are in the nature of child support. Therefore, the Court finds and orders that a deviation from the Child Support Guidelines is in the best

2

interest of the parties' children and neither party shall pay child support to the other for the children except as to the expenses set forth in the child support worksheet. (Emphasis added.)

¶3 The child support worksheet, attached as an exhibit to the consent decree, reflects that as of March 2021, Father paid $4,667 per month for the younger children's extra-educational expenses and $11,500 per month for the eldest child's extraordinary-care expenses. Consistent with the child support worksheet, the consent decree charges Father with the "sole[] responsib[ility] for paying private school tuition, uniforms and books" for the younger children. But in contrast to the simple and clear assignment of the younger children's extra-educational expenses wholly to Father, the consent decree details an elaborate framework for apportioning the costs of the eldest child's extraordinary care as follows:

> The parties *shall jointly maximize the use of state funded care programs* for [the eldest child]. If the parties agree upon a program or schooling with costs attendant to the program/schooling, [Father] shall pay all costs of the program or schooling. [Father] shall pay all care in [Mother's] home from 7 a.m. to 8:30 p.m. on days [the eldest child] is at [Mother's] home and *not eligible* to be in school or a program. If [the eldest child] is *attending* school or a program on one of [Mother's] parenting days, [Father] shall pay for care before and after the school/program but only during hours commencing at 7 a.m. and ending at 8:30 p.m. If [Mother] *removes* [the eldest child] from school or a program for reasons due to illness or a medical/dental appointment requiring a caregiver, [Father] will pay for that time. If [Mother] travels away from home with [the eldest child], [Father] will pay for [the eldest child's] care for the number of hours he would have paid if [the eldest child] had been in the *state-funded or other mutually agreed-upon program or schooling* and on weekends for [Mother's] travel from 7 a.m. to 8:30 p.m. if the program does not cover the weekend. The *remainder of care costs* for [the eldest child] shall be [Mother's] responsibility. (Emphasis added).

Using much of the same language, the parenting plan likewise spells out the parties' respective obligations for the eldest child's extraordinary care:

The parties *shall jointly maximize the use of state-funded care programs* for [the eldest child]. If the parties agree upon a program or schooling for [the eldest child] with costs attendant to the program/schooling, Father shall cover all costs of the program or schooling. Father shall pay all costs for [the eldest child's] care while in Mother's home from 7 a.m. to 8:30 p.m. when [the eldest child] is *not eligible* to be in a school or a program. If [the eldest child] is *attending* school or a program on one of Mother's parenting days, Father shall pay for care before and after the school/program, but only during hours commencing at 7 a.m. and ending at 8:30 p.m. If Mother *removes* [the eldest child] from school or a program for reasons due to illness or a medical/dental appointment requiring a caregiver, Father will pay for that time. If Mother travels away from home with [the eldest child], Father will pay for [the eldest child's] care for the number of hours he would have paid if [the eldest child] had been in the program and on weekends for Mother's travel from 7 a.m. to 8:30 p.m. if the program does not cover the weekend. The *remainder of any care costs* for [the eldest child] shall be Mother's responsibility. Neither parent *requires the approval of the other parent as to the employed care providers working in their own home*.

Subject to the other provisions of this Plan, the scheduling of [the eldest child's] child care providers shall be done by each parent for their own parenting time. . . . *Father shall only be obligated to reimburse Mother* for [the eldest child's] child care expenses for time the providers are actually providing care for [the eldest child] between the hours of 7:00 a.m. and 8:30 p.m. and *subject to the other provisions* of the parties' Decree of Dissolution of Marriage and this Plan (i.e., *Father is not required to reimburse Mother for [the eldest child's] child care costs if a state-funded care program is available*). (Emphasis added.)

¶4            About two months after entry of the consent decree, Mother petitioned for contempt, alleging Father violated the decree by failing to reimburse her for the extraordinary-care expenses she incurred in April and May 2021. Denying any violation, Father argued that the consent decree and parenting plan require him to pay for the eldest child's extraordinary-care costs *only* when no state-funded care is available—meaning Mother must first exhaust available state-funded care for which the eldest child is eligible before Father is obligated to pay for in-home care. Asserting Mother did not exhaust available state-funded care programs in April and May

2021, Father contended he was not obligated to reimburse her for any extraordinary-care expenses (in-home care) she paid during that time.

¶5            Given the parties' conflicting interpretations of their respective obligations under the consent decree, Mother moved to clarify the extraordinary-care provisions or, alternatively, set aside those provisions and establish child support. Because the parties construed the consent decree and parenting plan requirements differently, Mother claimed "there was no meeting of the minds" when the parties entered the agreements.

¶6            The family court accepted Mother's framing—that the parties had no mutual understanding of the consent decree and parenting plan requirements concerning the eldest child's extraordinary care—but found that Father did not willfully fail to comply with a court order, denying Mother's petition for contempt. After oral argument on the motion to clarify, the family court entered a final order adopting Mother's interpretation of the extraordinary-care provisions:

> In reviewing the relevant provisions as a whole, the Court agrees that the decree and parenting plan make a distinction between a program and day care. When [the eldest child] is enrolled in and attending a program (a structured event typically with a start and stop time for every day that a child is in the program), Father does not have to pay for day care. If the parties have not agreed on a program and [the eldest child] is receiving day care instead, Father pays for the care-givers.

¶7            Father moved for reconsideration, which the family court denied. Father timely appealed.

## DISCUSSION

¶8            Father challenges the family court's interpretation of the extraordinary-care provisions. First, he argues the term "program," as used within the consent decree and parenting plan, includes in-home care. Second, he contends that absent an agreement between the parties, he has no obligation to pay for the eldest child's extraordinary care during Mother's parenting time if the eldest child is eligible to receive care from an available state-funded program—even if Mother refuses to utilize that resource.

¶9 We review a family court's interpretation of a consent decree de novo. *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 10 (App. 2007). To construe a consent decree's provisions, "we apply the general rules of construction for any written instrument," considering the plain meaning of the words in the context of the entire decree and applying unambiguous language as written. *Id.* at ¶ 11.

¶10 Parties' disagreement about the meaning of language does not, by itself, constitute an ambiguity. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 258 (App. 1983). Because a consent decree is "an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties," we do not consider parol evidence to inform our interpretation of the decree. *In re Marriage of Zale*, 193 Ariz. 246, 249, ¶ 11 (1999).

¶11 When a plain reading of a provision, viewed in isolation, is susceptible to more than one construction, "we look to related provisions" of a decree to resolve the ambiguity. *In re Marriage of Johnson*, 231 Ariz. 228, 234, ¶ 20 (App. 2012). In general, we presume a word or phrase appearing repeatedly in a decree "is used in the same sense in both places." *Id.* But this "same meaning" rule does not override our obligation to interpret a consent decree in a manner that is consistent with its purpose and harmonizes its provisions. *See State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, 122, ¶¶ 23-24 (App. 2003) (explaining that "[w]hen the context of the words at issue differs[,] . . . a reasonable interpretation in one context does not compel that identical meaning in another context"); *Cohen*, 215 Ariz. at 67, ¶¶ 14-15. To that end, we will not assign meaning "to part of the language which would render another part meaningless, nor remake the language to alter the existing rights or obligations." *Stine v. Stine*, 179 Ariz. 385, 388 (App. 1994).

¶12 Guided by these principles, we examine the extraordinary-care provisions of the consent decree and the parenting plan. In both documents, the provisions first state: "The parties shall jointly maximize the use of state funded care programs for [the eldest child]." As the parties note, "program," viewed in isolation, has alternate meanings. Because neither the consent decree nor the parenting plan defines the word "program," Father contends that we should ascribe the term its ordinary meaning. *See State ex rel. Winkleman v. Ariz. Navigable Stream Adjudication Comm'n*, 224 Ariz. 230, 240, ¶ 24 (App. 2010) (explaining courts may consult dictionaries "to glean the plain meaning of" a word and should apply that plain meaning "unless the context suggests otherwise"). As commonly defined, a "program" is "a plan of activities to be done or things to be

achieved." *Program*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/program (last visited May 10, 2023). Consistent with Father's contention, the ordinary meaning of "program" is sufficiently broad to include in-home care. But, as first used within the extraordinary-care provisions of both documents, "program" is not a stand-alone term; rather, it is modified by the phrase "state funded care." A "state funded care program" is a particular type of "program." Section 36-558, which requires the State to establish, operate, and maintain state-funded programs and services for persons with developmental disabilities, specifically enumerates "[i]n-home" care services as a resource provided by the State. A.R.S. § 36-558(C)(4)(g). Thus, under A.R.S. § 36-558's rubric, the phrase "state-funded care program" expressly includes in-home care services. *See Baumgartner v. Timmins*, 245 Ariz. 334, 337, ¶ 11 (App. 2018) (explaining words may have technical meanings unique to a field).

**¶13** While acknowledging that the common definition of "program" encompasses in-home care services, Mother argues that within the broader context of the extraordinary-care provisions, applying the plain and ordinary meaning of "program" is nonsensical. As Mother correctly points out, most of the provisions' other references to "program" omit the "state funded care" modifier and instead pair "program" with "school." Given the repeated coupling of "school" and "program," Mother asserts under the noscitur a sociis doctrine the terms should be given "commensurate" meanings: an out-of-home service providing care. *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211, ¶ 13 (2019) (explaining "a word's meaning cannot be determined in isolation, but must be drawn from the context in which it is used," such that associating several terms suggests, in context, that "the terms have some quality in common").

**¶14** With Mother's assertion in mind, we turn to the second sentence of the extraordinary-care provisions in each document, which are substantially the same: "If the parties agree upon a program or schooling" with attendant costs, Father must pay "all costs of the program or schooling." By referencing attendant costs, "program," as used in this sentence, clearly pertains to a third-party care service that is not funded by the State. But the context of the sentence does not preclude application of the plain meaning of "program," which, as stated, encompasses in-home care services.

**¶15** Proceeding to the third sentence of each extraordinary-care provision—again substantively the same—Father must pay for "all costs" in Mother's home from 7:00 a.m. to 8:30 p.m. if the eldest child is "not eligible

to be in a school or a program." Contrary to Mother's contention, the context of this sentence does not suggest a deviation from the ordinary and plain meaning of "program," which encompasses both in-home and out-of-home care services. Nor does the context support Mother's argument that the word "eligible," as used here, means "actually enrolled in or attending," such that Father is required to pay for all third-party care in her home unless the eldest child is "actually enrolled in or attending" a school or program. Indeed, Mother's proposed construction strips the eligibility qualifier of any meaning because she does not incur in-home care expenses when the eldest child is "actually enrolled in and *attending*" a school or program, *see* infra ¶ 16. (Emphasis added.) *See Stine*, 179 Ariz. at 388 ("A meaning should not be assigned to part of the language which would render another part meaningless."). Ascribing the plain and ordinary meaning of eligible—"having the necessary qualities or satisfying the necessary conditions"—the sentence requires Father to pay all in-home extraordinary-care expenses incurred during Mother's parenting time only if the eldest child fails to qualify for a school or program. *Eligible*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/eligible (last visited May 10, 2023). This interpretation is consistent with the overarching principle underlying the introductory language of both extraordinary-care provisions, namely, that the parties must "jointly maximize the use of state-funded care programs." Read in that context, ineligibility means that the eldest child does not qualify for a state-funded school or program, not that she has failed to register for or enroll in one.

**¶16**        In sum, Father is financially responsible for extraordinary-care expenses incurred during Mother's parenting time only if: (1) the parties have agreed to a school or program with attendant costs, (2) Mother has exhausted available state-funded care services, or (3) the eldest child is otherwise ineligible for state-funded care. While the parties are free to arrange for caregivers in their respective homes without the approval of the other, they must agree to any program with attendant costs to trigger Father's financial obligation. In the absence of such an agreement, Mother must avail herself of her allotment of available state-funded care programs or bear the expense for other extraordinary-care services.[1]

---

[1]        We find no merit to Mother's contention that adopting Father's interpretation of the extraordinary-care provisions "undermin[es] the basis for the [family] court's child support decision." Although Mother correctly points to the substantial extraordinary-care expenses credited to Father in the child support worksheet, the consent decree expressly states that the

**CONCLUSION**

¶17        For the foregoing reasons, we vacate the family court's clarification order.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

parties' respective economic circumstances—not Father's payment of extra-educational and extraordinary-care expenses—warrant a deviation from the child support guidelines and further provides that Father's financial obligation for the eldest child's extraordinary care shall be determined by the framework outlined in the extraordinary-care provisions, not as detailed in the child support worksheet.